**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JORGE GONZALO SAMANIEGO,**<br>**Petitioner,**<br>**v.**<br>**MARKWAYNE MULLIN et al.,**<br>**Respondents.** | **NO. 5:26-cv-03709-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by Petitioner Jorge Gonzalo Samaniego ("Petitioner") on July 3, 2026. (Dkt. No. 1.) For the following reasons, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a native of Mexico who became a lawful permanent resident ("LPR") of the United States on January 9, 2011. (Dkt. No. 1 ¶ 4; Dkt. No. 10 at 2.) On June 3, 2026, Department of Homeland Security ("DHS") detained Petitioner upon his arrival at Los Angeles International Airport ("LAX") from a four-day trip to Mexico. (Dkt. No. 1 ¶ 7; Dkt. No. 10 at 2.) During Petitioner's inspection at LAX, "DHS flagged Petitioner's 2018 criminal conviction for a felony violation of California Penal Code § 245(a)(4) involving assault with force likely to cause great bodily injury with a punishment enhancement under California Penal Code § 12022.7(a) for great bodily injury." (Dkt. No. 10 at 2.) On June 5, 2026, DHS served Petitioner

a Notice to Appear and commenced immigration proceedings to determine whether Petitioner was inadmissible to enter the United States as a returning LPR under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA") due to his felony criminal conviction. (*Id.*) DHS transferred Petitioner to the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, where Petitioner remained detained until this Court ordered his release on July 29, 2026. (Dkt. No. 1 ¶ 7; Dkt. No. 16.)

On July 3, 2026, Petitioner filed the instant Petition seeking his immediate release based on three causes of action: (1) the government has improperly characterized Petitioner as an "arriving alien" subject to mandatory detention when he is actually a returning lawful permanent resident whose detention is governed by a different statutory scheme; (2) violation of Fifth Amendment due process based on deliberate indifference to serious medical needs; and (3) violation of Fifth Amendment due process for Petitioner's continued detention without a constitutionally adequate custody hearing. (Dkt. No. 1 at 14-18.) Respondents filed a Response to the Petition on July 9, 2026 in which they contend that Petitioner is correctly and lawfully detained under 8 U.S.C. § 1226(a) and that the proper remedy for any violation in this case is a bond hearing, not Petitioner's release. (Dkt. No. 10 at 3-6.)

On July 24, 2026, Petitioner filed a "First Ex Parte Application for an Order (1) Expediting Ruling on the Fully Submitted Petition Pursuant to 28 U.S.C. § 2243, Or, in the Alternative, (2) Ordering Interim Release Pending Adjudication, Based on Changed Medical Circumstances." ("Ex Parte Application," Dkt. No. 13.) Petitioner filed the Ex Parte Application based on "a material change in circumstances that has arisen since the Petition was submitted," namely, "Petitioner suffered a serious fracture of his left hand that was surgically repaired with internal metal hardware" and "[s]ince submission, that hardware has come loose." (*Id.* at 2.) Respondents filed an Opposition on July 24, 2026. (Dkt. No. 14.) Petitioner filed a Reply on July 27, 2026. (Dkt. No. 15.)

On July 27, 2026, the Court granted Petitioner's Ex Parte Application and ordered that Respondents immediately release Petitioner from detention. (Dkt. No. 16 at 7.) The Court also enjoined Respondents from re-detaining Petitioner without providing notice and a pre-deprivation hearing before a neutral immigration judge. (*Id.*)

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). District courts may grant a writ of habeas corpus where a petitioner demonstrates they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to postremoval-period detention.").

## DISCUSSION

### I. Mootness

"A case becomes moot—and therefore no longer a 'case' or 'controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Dung Duc Luu v. Bowen*, No. 5:25-cv-03145-MEMF-SP, 2026 U.S. Dist. LEXIS 47291, at *4-5 (C.D. Cal. Feb. 12, 2026) (quoting *Rosebrock v. Mathis*,

745 F.3d 963, 971 (9th Cir. 2014)). "For a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007).

Notably, a habeas petitioner's temporary release from custody pursuant to a temporary restraining order or preliminary injunction does not necessarily moot the underlying habeas petition. *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (finding that the immigration detainees' release on bond pursuant to a preliminary injunction was not sufficient to moot the habeas petition because the preliminary injunction was not permanent). This is because preliminary relief only requires determination of whether the petitioner is likely to succeed on the merits rather than a conclusive resolution of the petitioner's claims. *See Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) ("Preliminary injunctions, however, do not conclusively resolve legal disputes. In awarding preliminary injunctions, courts determine if a plaintiff is likely to succeed on the merits—along with the risk of irreparable harm, the balance of equities, and the public interest."); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (holding that a petitioner who filed a writ of habeas corpus while in custody and was later released before his application was considered was "entitled to consideration . . . for relief on its merits" because he still bore the consequences of his "assertedly unlawful conviction").

As noted, this Court ordered Petitioner's release from immigration detention on July 29, 2026. (Dkt. No. 16.) "As other decisions from this District have observed, the conclusion that preliminary habeas relief does not moot the petition is consistent with the nature of such relief." *Y.L.S. v. Santacruz*, No. 5:25-cv-02927-CV-MBK, 2026 U.S. Dist. LEXIS 54421, at *11 (C.D. Cal. Feb. 5, 2026) (colleting cases). Moreover, "Respondents offer no indicia that Petitioner would not be subject to detention without a hearing while [his] petition is pending in this Court but for preliminary injunctive relief." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 U.S. Dist. LEXIS 234185, at *7 (C.D. Cal. Dec. 1, 2025) (finding that "habeas relief remains

available at least to prevent a further detention without a pre-detention hearing"). Thus, if the Petition were not adjudicated on the merits, Petitioner would "face[] a risk of future re-detention in the same manner that this Court barred through preliminary relief." *Im*, 2026 U.S. Dist. LEXIS 13231, at *3. As such, the Court concludes that the Petition is not moot.

## II. <u>Procedural Due Process</u>

Having found the Petition is not moot, the Court will next address the merits of Petitioner's habeas claims. The Court begins with Petitioner's due process claim based on his detention without a constitutionally adequate hearing.

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the

government's interest.

With respect to the first *Mathews* factor, Petitioner "is a long-time lawful permanent resident with strong family ties." (Dkt. No. 1 ¶ 54.) Thus, "Petitioner possesses protected liberty interests that accompanies his status as a lawful permanent resident, including his right to remain free from immigration custody and to support and maintain ties with his family[.]" *Amezcua v. Noem*, No. 5:26-cv-01070-SRM-AGR, 2026 U.S. Dist. LEXIS 86126, at *18 (C.D. Cal. Mar. 25, 2026). Lawful permanent residents are the "most favored category of [noncitizens] admitted to the United States." *Kim v. Ziglar*, 276 F.3d 523, 528 (9th Cir. 2002), *rev'd sub nom.*, *Demore v. Kim*, 538 U.S. 510 (2003). This is because "immigration laws give LPRs the opportunity to establish a life permanently in this country by developing economic, familial, and social ties indistinguishable from those of a citizen." *Demore*, 538 U.S. at 544; *see also Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1152 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Notably, "LPRs do not lose their due process protections and liberty interest merely because they are subject to removal." *Amezcua v. Noem*, No. 5:26-cv-01070-SRM-AGR, 2026 U.S. Dist. LEXIS 86126, at *17 (C.D. Cal. Mar. 25, 2026); *see also Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010) ("[E]ven where there are grounds to seek deportation or removal, a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered."); *Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 U.S. Dist. LEXIS 101700, at *5 (S.D. Cal. May 7, 2026) ("Critically, an LPR does not lose their protected interest merely because the Government has initiated removal proceedings or even ordered them removed.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation of liberty is undoubtedly high where, as here, Petitioner was detained without any procedural safeguards to determine whether his detention is justified. "Even if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate the detention

in a manner that comports with due process." *Ordoñez v. Bondi*, No. 2:25-cv-02356-JHC-TLF, 2025 U.S. Dist. LEXIS 269568, at *11 (W.D. Wash. Dec. 19, 2025). Although Petitioner was convicted of a criminal offense after taking a plea in 2018, DHS did not detain Petitioner and initiate removal proceedings at that time. Instead, Petitioner completed his probation and continued living in the United States as a lawful permanent resident without further incident until his detention eight years later. *Pham v. Becerra*, 717 F. Supp. 3d 877, 886 (N.D. Cal. 2024) ("[Petitioner] has served his sentence; completed post-conviction programs, including an alcohol-abuse program; and is by all accounts, a law-abiding citizen. Given this context, the risk of erroneous deprivation is high."). Thus, "it entirely fails to show how Petitioner's circumstances constitute a special case that 'urgently require[s] arrest' such that providing notice and a pre-deprivation hearing would reasonably be considered 'impracticable[.]'" *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 U.S. Dist. LEXIS 69720, at *12 (W.D. Wash. Mar. 31, 2026) (quoting *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 U.S. Dist. LEXIS 168147, at *28 (E.D. Cal. Aug. 28, 2025)).

Finally, as to the third *Mathews* factor, "while the government has a strong interest in ensuring that noncitizens do not pose a flight risk or danger, the government's interest in detaining a noncitizen without notice or a pre-deprivation hearing imposes minimal financial or administrative burdens as compared to the cost of detaining a noncitizen pending a bond hearing, or removal, where it is unwarranted." *Amezcua*, 2026 U.S. Dist. LEXIS 86126, at *21; *see also Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, at *17-18 (C.D. Cal. Aug. 26, 2025) (finding that "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal). Thus, "[r]equiring the government to provide [Peittioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk." *Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 U.S. Dist. LEXIS 110194, at *14 (N.D. Cal. June 11, 2021); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (finding that the government's

interest in enforcing immigration regulations is not threatened if a pre-deprivation hearing is required).

On balance, the *Mathews* factors demonstrate that Petitioner's detention without notice or a pre-deprivation hearing violated his right to procedural due process. Because the Court finds that Petitioner is entitled to habeas relief on due process grounds, it need not address Petitioner's remaining claims.

**ORDER**

For the foregoing reasons, the Petition is **GRANTED**. **IT IS ORDERED** that Respondents shall immediately release Petitioner Jorge Gonzalo Samaniego (A-Number 061-864-169) from custody and return any property seized from him in the course of his arrest and detention if they have not already done so. Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release. **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.[1] Judgment will be entered accordingly.

DATED: August 24, 2026

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

[1] Petitioner also requests an award of costs and attorney fees. (Dkt. No. 1 at 28.) Any request for costs and fees must be filed separately and in accordance with the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.